[Civil No. 3429.   Filed November 27, 1934.]

[38 Pac. (2d) 311.]

M. H. STARKWEATHER and RINCON RANCH COMPANY, a Corporation, Appellants, v. ARCHIE R. CONNER, as Executor of the Last Will and Testament of WALTER S. GURNEE, Deceased, Appellee.

Messrs. Knapp, Boyle & Thompson, for Appellants.

Messrs. Mathews & Bilby and Mr. T. K. Shoenhair, for Appellee.

LOCKWOOD, J.—This is an action brought by Archie R. Conner, as executor of the last will and testament of Walter S. Gurnee, deceased, to quiet title to 55 shares of capital stock of Rincon Ranch Company, an Arizona corporation, against said corporation and M. H. Starkweather, the latter hereinafter called defendant. Judgment was rendered in favor of plaintiff, and this appeal was taken.

There are three assignments of error, the first that the court erred in rejecting certain evidence offered by defendant, and the other two going to the sufficiency of the evidence to sustain the judgment. In order that we may pass properly on these, it will be necessary to state briefly the undisputed facts:

Rincon Ranch Company was incorporated with an authorized capital stock of $50,000 common and $50,000 preferred stock. At a meeting of the board of directors held October 8, 1928, Walter S. Gurnee, who was then president, proposed to purchase from the corporation at par for cash 30 shares of the preferred capital stock, and M. H. Starkweather, who was then secretary, offered to purchase the same amount. The offer was accepted by the board, and on February 9, 1929, certificates of stock were issued

to Gurnee and Starkweather for the stock so pur-chased. Thereafter and on January 30, 1931, Gurnee surrendered his certificate for the 30 shares of stock issued to him, and another certificate to replace such certificate was issued to him on that date. There were also issued on the same date certificates num-bered 4 and 5 in the amount of 25 shares each to Gurnee and Starkweather, respectively; there being thereafter and on that date, as shown by the books of the company, 55 shares of capital stock repre-sented by certificates numbered 3 and 4 outstanding in the name of Walter S. Gurnee and 55 shares repre-sented by certificates 2 and 5 outstanding in the name of M. H. Starkweather. The stubs of the stock register for certificates 1, 2, 4 and 5 bore canceled United States revenue stamps in the proper amount for original issues of stock, but the stub for certifi-cate 3 bore no stamps. Certificates numbered 3 and 4, above referred to, as issued to Walter S. Gurnee, are those which are in controversy in the present action.

The case came on for trial before a jury, and plain-tiff offered in evidence the records of the company showing the foregoing facts and thereupon rested. Thereafter defendant Starkweather took the stand and testified, in substance, that certificates 3 and 4 issued in the name of Walter S. Gurnee were in his posses-sion and had been since the day after they were issued. The certificates themselves were then intro-duced in evidence, and it appeared that upon their back they bore the following typewritten indorse-ment:

"For value received, I hereby sell, assign and transfer to —— thirty shares of the Capital Stock represented by the within certificate and do hereby irrevocably constitute and appoint M. H. Stark-weather to transfer the said stock on the books of the

within named corporation with full power of substitution in the premises.

"Dated ——.

"In Presence of ——.

"(Signed)   W. S. GURNEE"

it being testified by Starkweather that the signature "W. S. Gurnee" affixed thereto was written by Gurnee at the time the certificate was issued. He was then asked as to what was done to the certificates by Gurnee, and objection was immediately made by plaintiff as to any testimony concerning any transaction with the latter; this objection being based upon the provisions of section 4414, Revised Code of 1928, which reads as follows:

"§ 4414. *Limitations to testimony in actions by or against personal representatives.* In an action by or against executors, administrators or guardians, in which judgment may be rendered, for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party or required to testify thereto by the court, and the provisions of this section shall extend to and include all actions by or against the heirs, devisees and legatees or legal representatives of a decedent arising out of any transaction with such decedent."

There was an extended argument over the admissibility of the testimony, defendant urging that Starkweather's deposition had been taken by plaintiff as an opposite party, going very fully into the transaction between himself and Gurnee regarding the stock in question, and therefore, even though such deposition was never offered in evidence by plaintiff, he had waived his right to take advantage of the provisions of section 4414, *supra,* and plaintiff claiming that, since he had not offered the deposition at the trial, he was not precluded from making the ob-

jection. The court finally ruled that the objection had not been waived by the taking of the deposition. Starkweather then testified that the certificates had been in his possession in his personal lock box since the day after the date of their issuance, and that he did not hold them in his possession as an officer of the company. Thereafter defendants rested.

Plaintiff then called Gerald Jones, who had for some time acted for Gurnee as his attorney, as a witness, and he testified that Starkweather had told him that he was the agent for Gurnee and acting practically as his secretary for a year and a half or two years prior to Gurnee's death, and that he on a number of occasions had consulted Jones in regard to Gurnee's business. Starkweather was then recalled by defendants and was asked as to how he held the certificate in question. To this objection was made on the ground that, if it referred to any transaction with Gurnee, it was barred by the statute, and the court ruled that the witness might not testify as to any transactions with Gurnee, but that, if he held them through anyone except Gurnee, he might testify, and after this ruling no testimony was offered by Starkweather as to his holding them through anyone else. This is substantially all the testimony which appears in the record. By consent of both parties the court discharged the jury, and, after considering the matter, rendered judgment in favor of plaintiff.

We consider first the assignment in regard to the rejection of the testimony of Starkweather. We are of the opinion that under the peculiar provisions of our statute the court correctly ruled that the taking of the deposition of the opposite party by plaintiff when it was not offered in evidence by him did not waive his right to take advantage of the statute. *Kentucky Utilities Co.* v. *McCarty's Admr.,* 169 Ky.

38, 183 S. W. 237; *Bambauer* v. *Schleider et al.,* 176 App. Div. 562, 163 N. Y. Supp. 186; *Farmers' Loan & Trust Co.* v. *Wagstaff et al.,* 194 App. Div. 757, 185 N. Y. Supp. 812.

Counsel for plaintiff has cited to us on this point the case of *McClenahan* v. *Keyes,* 188 Cal. 574, 206 Pac. 454, but we think it is not in point, for the reason that the California statute in regard to depositions differs widely from ours.

We come then to the question as to whether the testimony above set forth is sufficient to sustain a judgment in favor of plaintiff. It is admitted by both parties that the decision turns upon the question of what presumptions of law and inference are to be drawn therefrom. There is a great difference between an "inference" and a "presumption." An inference is a deduction drawn from certain facts by the reason, while a presumption is an arbitrary conclusion which the law says must be drawn from certain facts, which conclusion may be either reasonable or unreasonable. Taking the evidence offered by plaintiff in his case in chief, it is undisputed that the certificates numbered 3 and 4 in controversy were issued to Walter S. Gurnee on January 30, 1931. This, it is admitted by both parties, was sufficient, in the absence of any further evidence, to raise the presumption that the stock belonged to him. Such presumptions, however, are of course rebuttable, and defendant for this purpose offered evidence that the stock was, and had been since a day or two after its issuance, in the possession of Starkweather. This in the absence of any further evidence would overcome the original presumption of ownership by Gurnee and be *prima facie* proof of ownership by defendant, for the mere possession of personal property, unless that possession is qualified or explained, raises the pre-

sumption of ownership in the possessor. *Wright* v. *Solomon,* 19 Cal. 64, 79 Am. Dec. 196; *Fawcett* v. *Osborn,* 32 Ill. 411, 83 Am. Dec. 278; *Bergen* v. *Riggs,* 34 Ill. 170, 85 Am. Dec. 304; *Avery* v. *Clemons,* 18 Conn. 306, 46 Am. Dec. 323. Counsel for plaintiff, recognizing this rule, sought to overcome it by showing that Starkweather was the general agent for, and secretary of, Gurnee for some two years prior to his death, and that his possession was thus consistent with ownership of the stock by Gurnee.

This brings us to the decisive question in the case, which is whether the possession, by an agent, of corporate stock issued in the name of a principal and indorsed in blank by him, is possession of such a nature as to raise the presumption of ownership of the stock by the agent. It is of course the rule that an agent in the conduct of his agency is bound to exercise the utmost good faith on behalf of his principal, and that any transactions between the principal and the agent in the course of such agency will be strictly scrutinized. *Thomas* v. *Newcomb,* 26 Ariz. 47, 221 Pac. 226. It is therefore quite generally held that the burden of proof is upon an agent in all transactions between him and his principal to show the utmost good faith, and an absence of all undue influence, advantage, or imposition. *Paige* v. *Akins,* 112 Cal. 401, 44 Pac. 666; *Fox* v. *Simons,* 251 Ill. 316, 96 N. E. 233; *Nesbit* v. *Lockman,* 34 N. Y. 167; *Webb* v. *Marks,* 10 Colo. App. 429, 51 Pac. 518. If, therefore, Starkweather was the general agent for Gurnee at the time he received possession of the certificates in question, and if he received them from Gurnee, we think the burden of proof was on him to show in a legal manner that he received them in such a manner as to pass title to him. It was necessary, therefore, that plaintiff, in order to place this burden

on defendant, should show (a) that Starkweather received the certificates from Gurnee, and (b) that at such time he was Gurnee's general agent. There is no direct testimony in the record as to whom he received the certificates from. It does show, however, that, when he was asked from whom he received them, and objection to the question was made, and the court ruled that, if he had received them from any person than Gurnee, he might testify in regard to the transaction, he did not attempt to give any testimony to that effect. It is the rule that, where the existence or nonexistence of a certain fact is within the peculiar knowledge of a witness, and he fails to testify as to the fact, the trier of fact may justly draw the inference that the true fact is against his interest. *Bastrop State Bank* v. *Levy,* 106 La. 586, 31 So. 164; *Kirby* v. *Tallmadge,* 160 U. S. 379, 16 Sup. Ct. 349, 40 L. Ed. 463. We think, therefore, that the trial court was justified in drawing the inference from Starkweather's failure to testify that some person other than Gurnee had given him the stock, that the stock had passed into his possession from Gurnee, although, of course, there could be no inference from this fact alone as to under what circumstances such change of possession was made. We think also that the trial court was justified in drawing the inference from the testimony of the witness Jones that Starkweather was, at the time that the change in possession of the stock occurred, the general agent and confidential secretary of Gurnee.

We then have the possession of the certificates by Starkweather, qualified by the fact that they came into his possession from Gurnee at the time he was the general agent and confidential secretary of the latter. This we think is sufficient to destroy the pre-

sumption of ownership created by the mere possession of the certificates, and places upon Starkweather the burden of showing in some manner other than mere possession his ownership of the certificates in question. Much was said during the oral argument of the case as to the nature and effect of presumptions and of the rule that a presumption may not be founded upon a presumption or an inference drawn from an inference. Some courts hold that a presumption is in the nature of evidence and is to be weighed as such. *Hitchcock* v. *Rooney,* 171 Cal. 285, 152 Pac. 913; *Consor* v. *Andrew,* 61 Or. 483, 123 Pac. 46; *Sheldon* v. *Wright,* 80 Vt. 298, 67 Atl. 807. On the other hand, courts of equal authority have held that it is only a rule of law as to which party shall proceed and go forward with the evidence to prove an issue. *Duggan* v. *Bay State St. R. Co.,* 230 Mass. 370, 119 N. E. 757, L. R. A. 1918E 680; *Rock Island Plow Co.* v. *Balderson,* 26 S. D. 399, 128 N. W. 482. We think the question is more technical than real, for the effect in either case is the same. When the presumption exists, a certain conclusion must be reached by the court, unless evidence is offered which changes the situation. In this case the trial court necessarily reached its conclusion after a consideration of all the evidence, and, if such conclusion was correct, it matters not as to whether it considered the various presumptions as matters of evidence or rules of law. Nor in this case is there any question of a presumption upon a presumption or an inference from an inference. The evidence shows a general agent receiving from his principal property belonging to that principal, with no explanation as to the manner in which or the purpose for which it came into his possession. Under such circumstances we think the trial court properly held that the burden of proving

ownership by him was on the agent, and that, since he failed to sustain that burden, the title to the property was in the plaintiff.

The judgment of the superior court of Pima county is affirmed.

ROSS, C. J., and McALISTER, J., concur.