493 P.2d 632

**KENNECOTT COPPER CORPORATION, a corporation, et al., Plaintiffs,**

v.

**STATE TAX COMMISSION of Utah, Defendant.**

No. 12498.

Supreme Court of Utah.

Jan. 24, 1972.

Parsons, Behle & Latimer, Calvin A. Behle, Gordon L. Roberts, John A. Dahlstrom, Roy B. Moore, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., F. Burton Howard, SAAG, Salt Lake City, for defendant.

TUCKETT, Justice:

Certiorari to the State Tax Commission to review a decision of the Commission assessing a deficiency franchise tax assessment against plaintiffs for the years 1967 and 1968.

Kennecott Copper Corporation is a New York corporation and the other corporations named as plaintiffs herein are wholly owned subsidiary corporations of Kennecott and all have qualified to do business in the state of Utah.

These proceedings resulted after the auditing division of the State Tax Commission proposed a deficiency assessment against Kennecott and its affiliated corporations and plaintiffs herein for the years 1967 and 1968 in the sum of $2,444,101.62. Kennecott filed its petition requesting a redetermination by the Commission. After a hearing before the Commission the proposed deficiency assessment by its auditing division was modified and a deficiency assessment in the sum of $2,313,507.72 was found due and payable. Kennecott is here seeking a reversal of the decision of the Commission.

Kennecott is a worldwide business organization which is principally devoted to the mining, recovery, refining and the fabrication of metals. Kennecott and affiliated corporations named as plaintiffs in these proceedings own and operate mining properties in the states of Utah, New Mexico, Arizona and Nevada.

For the years 1962 through 1966, Kennecott filed its franchise tax returns in accordance with an agreement worked out between the Tax Commission and Kennecott. In 1967, the Legislature adopted, with some modifications, the Uniform Division of Income For Tax Purposes Act proposed by the National Conference of Commissioners On Uniform State Laws. The formula for apportionment of business income is set forth in Section 59–13–86, U.C.A.1953 as amended which provides as follows:

All business income shall be apportioned to this state by multiplying the in-

come by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three.

The property factor mentioned in the formula is defined in Section 59–13–87, in the following language:

The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period.

The payroll factor is defined in Section 59–13–90, as follows:

The payroll factor is a fraction, the numerator of which is the total amount paid in this state during the tax period by the taxpayer for compensation, and the denominator of which is the total compensation paid everywhere during the tax period.

The sales factor of the formula is defined in Section 59–13–92, as follows:

The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

Section 59–13–93 defines sales of tangible personal property in the following language:

Sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state regardless of the f.o.b. point or other conditions of the sale.

The Uniform Act contained a further provision:

The property is shipped from an office, store, warehouse, factory, or other place of storage in this state and . . . the taxpayer is not taxable in the state of the purchaser.

Kennecott filed its franchise tax returns for the years 1967 and 1968 in accordance with the formula set forth in the 1967 Act. The use of the formula resulted in a sharp decline in the franchise taxes due the state of Utah for those years. The auditing division of the Tax Commission was of the opinion that the consolidated returns filed by Kennecott did not fairly reflect the extent of its business activity in Utah and proceeded to re-examine Kennecott's returns and to make its own determination. The reassessment and redetermination in these proceedings by the Commission were had pursuant to the provisions of Section 59–13–95 which is as follows:

If the allocation and apportionment provisions of this act do not fairly represent the extent of the taxpayer's business

activity in this state, the taxpayer may petition for or the state tax commission may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

(a) separate accounting;

(b) the exclusion of any one or more of the factors;

(c) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

(d) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

Kennecott's franchise tax return for the year 1967 reported a property fraction, the numerator of which was $329,428,667.70 and the denominator of which was $775,-807,391.97, resulting in a fraction showing 42.46 plus per cent of its tangible property was located in the state of Utah. The 1968 return showed a property fraction of the numerator of $359,137,292.71 and a denominator of $1,007,313,895.65, resulting in a fraction of 35.65 plus per cent of Kennecott's total tangible property being in the state of Utah. The payroll factor showed a fraction, the numerator of which was total compensation paid in Utah and the denominator of compensation paid everywhere. The numerator in 1967 was $44,142,556.24 and the denominator of

$102,926,954.90, resulting in a fraction of 42.88 plus per cent of the total payroll of Kennecott in this State. In 1968, the numerator was $55,369,136.34 and the denominator of $166,040,056.94 for compensation paid everywhere resulting in a fraction of 33.36 plus per cent of the total payroll of Kennecott being charged to its Utah division. The sales factor as shown by the return for 1967 showed a numerator of $3,-308,738.42 and a denominator of $397,937,-486.78, which resulted in apportionment fraction of 0.831 plus per cent of gross sales attributable to the state of Utah. The 1968 return showed a fraction of 0.568 plus per cent of its gross receipts from sales arising from Utah operations. The language of Section 59–13–92 above referred to "sales of the taxpayer in this state" would seem to omit the sales of products shipped to a purchaser outside of Utah. The use of this factor tended to greatly diminish the amount of the franchise taxes due under the returns filed by Kennecott for the years 1967 and 1968 and resulted in the Commission's modification of the formula under the relief provisions of Section 59–13–95. Kennecott's tax return for the year 1967 showed a net income of $39,868,473.91 for the affiliated group and of that sum $4,645,102.31 was allocated to Utah. Also, the 1968 return reported a net income of $78,331,527.93 and the sum of $7,763,163.36 was allocated to activities in Utah.

In the year 1967, Kennecott for the purposes of computing its depletion allowance, reported gross receipts for sales from its Utah division in the sum of $158,268,903.91. After deducting certain post-mining costs, selling expenses and other expenses and losses, it reported an income for depletion purposes from the Utah division of $117,443,496.51. After deducting mining and concentrating expenses Kennecott reported a net income from its Utah division of $33,380,443.69. Likewise for the year 1968 Kennecott claimed a far greater net income from its Utah operations for the purpose of calculating its depletion allowance than the net income reported on its franchise tax return.

█ It is Kennecott's contention that the Legislature having adopted a formula for apportionment of business income to the State, the Tax Commission was not authorized to depart from that formula and to make its own allocation. The Legislature which adopted the Act as a proposed uniform state law also included within the Act the provisions of Section 59–13–95, U.C.A.1953 as amended, which authorizes the Tax Commission to employ another method to effectuate an equitable allocation of the taxpayer's income if the apportionment provisions of the Act do not fairly represent the extent of the taxpayer's business activity in this State. It should be noted that the provisions of the last-mentioned section may be invoked at the instance of the Commission or at the behest of the taxpayer. We do not construe the statute as limiting the Commission to the use of the formula in all cases. The record supports the Commission's conclusion that the use of the formula did not fairly represent the extent of Kennecott's business activity in this State during the years 1967 and 1968. The right of the Commission to depart from the statutory formula has been before this Court on prior occasions construing statutes containing dissimilar language but of similar import.[1]

█ Kennecott contends that the decision of the Tax Commission violates the provisions of the commerce clause (Article I, Sec. 8, Cl. 3) and the Fourteenth Amendment to the United States Constitu-

1. California Packing Corp. v. State Tax Commission, 97 Utah 367, 93 P.2d 463. Kennecott Copper Co. v. State Tax Commission, 118 Utah 140, 221 P.2d 857. These cases dealt with the provisions of Subsection 8 of Section 80–13–21 U.C.A. 1943 which provides as follows: "If in the judgment of the tax commission the application of the foregoing rules does not allocate to this state the proportion of net income fairly and equitably attributable to this state, it may with such information as it may be able to obtain make such allocation as is fairly calculated to assign to this state, the portion of net income reasonably attributable to the business done within this state and to avoid subjecting the taxpayer to double taxation."

Western Contracting Corp. v. State Tax Commission, 18 Utah 2d 23, 31, 414 P.2d 579, 585.

tion. The Utah act we are here dealing with does not seek to impose a tax upon income or business done outside the state of Utah. The act only seeks to impose a tax upon that portion of Kennecott's income which is derived from its business activity in this State. We are of the opinion that the statute and the decision of the Commission do not infringe constitutional rights of Kennecott.[2]

■ Kennecott further urges that the Commission was in error in its redetermination of the depletion allowances claimed for the years here in question. We conclude that the action of the Commission in this regard was proper and within the prior decisions of this Court.[3]

■ Kennecott further contends that the Commission erred in its allocation of deductible federal income tax to the Utah affiliated group. This matter was handled in accordance with the regulation of the Commission rather than federal regulations. Kennecott was bound by the regulations of the Commission and we perceive no error in its application.

■ Kennecott claims that the Commission abused its discretion in assessing interest on the tax deficiencies. This is a matter solely within the discretion of the Commission and we see no reason to substitute our judgment for that of the Commission.

After a careful consideration of the entire record we discern no error which would justify a reversal of the decision of the Tax Commission, and the same is affirmed. No costs awarded.

ELLETT and CROCKETT, JJ., concur.

HENRIOD, J., having disqualified himself did not participate herein.

CALLISTER, Chief Justice (dissenting) :

I respectfully dissent. The justification for the Commission to depart from the statutory formula was premised primarily on the alleged distortion caused by the sales factor, which by legislative determination did not attribute to this jurisdiction any sale of tangible personal property shipped or delivered to a purchaser out of state, 59–13–92, 93, U.C.A.1953, as amended 1967. The Commission thus proceeded to repeal or amend the entire statutory scheme under the relief provisions of 59–

---

2. General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 ; General Motors Corp. v. District of Columbia, 380 U.S. 553, 561, 85 S.Ct. 1156, 14 L.Ed.2d 68 ; Illinois Central R. R. Co. v. Minnesota, 309 U.S. 157, 60 S.Ct. 419, 84 L.Ed. 670.

3. Section 59–13–7(8) (9) U.C.A.1953 ; Kennecott Copper Co. v. State Tax Commission, ´118 Utah 140, 221 P.2d 857 (Supra) ; Kennecott Copper Corp. v. State Tax Commission, 5 Utah 2d 306, 301 P.2d 562.

13–95 on the ground that the apportionment provisions did not "fairly represent the extent of the taxpayer's business activity in this state." This phrase cannot be interpreted in a vacuum; although there are certain constitutional limitations, the legislature may, otherwise, deem what it considers business activity in this state. We thus reach the anomalous situation reflected in the administrative decision that the legislative policy that the sales are not a business activity in this state fails to reflect the taxpayer's business activities in this state. A more rational approach in evaluating the apportionment formula would be to construe together all the provisions of the Uniform Division of Income for Tax Purposes Act, Secs. 59–13–78 through 97, U.C.A.1953, as amended 1967; if a matter be deemed not a business activity with this state in any provision of the act, it should not be so designated in the evaluation process under the relief provisions of Section 95.

A similar issue was before this court in Kennecott Copper Corporation v. State Tax Commission [1] wherein this court stated:

. . . we reverse those portions of the Commission's findings and conclusions which attribute sales to Utah where no taxable event occurs within this State under the definition of business situs of sales adopted by the Legislature.

In a comprehensive review of the uniform act as recently enacted in California, Keesling and Warren [2] explained:

A few states even apportioned sales to the state or country in which the property sold was manufactured or produced. This method completely ignores the fact that the primary reason for including the sales factor is to give weight to the obtaining of markets, thereby balancing to some extent the property and payroll factors which are apt to be heavily concentrated in the state or country where the production or manufacturing operations are located.

In the instant action the Tax Commission, in defiance of express legislative policy and in disregard of the balancing purpose of the sales factor in a production jurisdiction, in effect apportioned the sales of Utah Copper Division to this state. Precisely, the Commission took the figures provided by Kennecott for its depletion allowance to prove the impropriety of the formula. The depletion allowance is determined by taking the gross income from the property and after deducting certain post-mining expenses and federal taxes, the remainder is net income from the property

---

1. 5 Utah 2d 306, 317, 301 P.2d 562, 569 (1956).

2. Keesling and Warren, California's Uniform Division of Income For Tax Purposes Act, Part II, 15 U.C.L.A. L.R. 655, 670.

from which the amount of depletion is calculated. The Tax Commission determined that this net income from the property minus depletion constituted the actual sales and thus concluded that the sales factor in the formula did not fairly reflect actual business activity in the area of sales. The Commission has thus asserted in its brief that all indicia of business activity and the uncontroverted evidence indicate that the income attributable to the State of Utah by Kennecott on its consolidated franchise tax returns is out of all appropriate proportion to the business transacted by the taxpayer in this state.

Based on the determination that these legislatively-designated out-of-state sales were in fact business transacted in Utah, the Tax Commission preceded to deviate from the formula; was this action justified?

The purpose of the three-factor formula is to provide a rough but equitable method of making a proper allocation, and if one factor tends to allocate a disproportionate amount of net income, the other factors tend to compensate for this matter. To rebut the presumption of the fairness of the formula, there must be clear and cogent evidence directed to each element of the equation to prove that the assumed relation among the various factors produced an erroneous result.[3]

In addition to the foregoing principles which were declared under the statutory formula in effect prior to the enactment of the uniform law, there is the legislative expression in mandatory terms in the present act, wherein it is stated in Sec. 59-13-86:

All business income *shall be* apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three. [Emphasis added.]

Section 59-13-96 provides:

This act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it.

The Uniform Act was drafted to promote uniformity in allocation practices among the 38 states which impose taxes on or measured by income of corporations and to relieve the pressure for congressional legislation in this field.[4]

There are completely compelling reasons for giving the relief provisions a narrow construction. Under a broad construction the purposes of obtaining

---

3. Western Contracting Corp. v. State Tax Comm., 18 Utah 2d 23, 34, 414 P.2d 579 (1966).

4. Keesling and Warren, California's Uniform Division of Income For Tax Purposes Act, Part I, 15 U.C.L.A. L.R. 156.

uniformity through the adoption of the Uniform Act would be defeated. If a choice of methods is permitted, different administrators in different states inevitably will choose different methods. As a result, even if all the states imposing taxes on or measured by income should adopt the Uniform Act, the chaotic condition heretofore existing would continue to exist.

Professor Pierce, the draftsman of the Uniform Act, clearly was of the opinion that the relief provisions should be interpreted narrowly and were designed to permit the use of methods different than those prescribed in the Act only in unusual cases and in cases where the application of the specifically prescribed methods might be held unconstitutional. Shortly after the act was drafted he published an article discussing these provisions. He states that "[t]he Uniform Act, if adopted in every state having a net income tax or a tax measured by net income, would assure that 100 percent of income, and no more and no less, would be taxed." Obviously this statement would not be true if the relief provisions were interpreted to give the administrators in the different states broad discretion in the selection of alternative methods.[5]

Although the Tax Commission asserts that the property and payroll factors are grossly disproportionate to the business reported by the taxpayer, there is no evidentiary basis to sustain this contention. The entire distortion is a direct result of the Commission's adamant refusal to accept the legislative attributive policy concerning sales. The presumption of fairness of the formula has not been rebutted by clear and cogent evidence directed to each element of the equation. Furthermore, to achieve uniformity and to prevent the taxation of extraterritorial income the relief provisions of the act should be narrowly construed. Under the facts of the instant case, the taxpayer ₁should have been permitted to utilize the statutory formula. I further believe the Tax Commission abused its discretion when it refused to waive interest. The taxpayer complied with the statutory requirements; the administrator then deemed it appropriate to alter the formula under the relief provisions. The taxpayer had no notice that a new law was to be created and applied exclusively for its taxation; under such circumstances the charge of interest was arbitrary, capricious and unreasonable.

ERICKSON, District Judge, concurs in the dissenting opinion of CALLISTER, C. J.

---

5. Id. at 171.