**CONTINENTAL TELEPHONE COMPANY OF UTAH, Plaintiff,**

v.

**STATE TAX COMMISSION OF UTAH, Defendant.**

Nos. 13842, 13843.

Supreme Court of Utah.

Aug. 15, 1975.

Merrill R. Weech, John W. Horsley, of Moyle & Draper, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Salt Lake City, for defendant.

Merrill R. Weech and Larry C. Holman, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, for Walker Bank & Trust Co., amicus curiae.

CROCKETT, Justice:

The plaintiffs, Midland Telephone Company, providing service in Grand County, and Utah Telephone Company,[1] providing service in Box Elder County, are both subsidiaries of Continental Telephone Corporation, a corporation with nationwide operations. They claimed as deductions on their Utah tax returns, payments transferred to Continental in connection with the preparation and payment of consolidated federal tax returns for the tax years 1965 through 1970. The Tax Commission partially disallowed plaintiffs' claimed deductions for payment of federal income taxes, by reducing the deductions allowable for the federal transfer payments to Continental to the proportion that plaintiffs' federal taxable income bears to the total amount of federal taxes actually paid by Continental. Plaintiffs seek reversal of the Tax Commission's decision and full allowance on their state returns of the amounts they paid to Continental.

Plaintiffs contend that the deductions taken by them for payment of federal taxes are expressly authorized by Section 59–13–7, U.C.A.1953, quoted below; and that the deduction and allocation made by the Tax Commission is not justified either under Section 59–13–17, U.C.A.1953, or Utah Corporation Franchise Tax Regulation 13, upon which the Commission based its action.

Continental Telephone Corporation, the parent corporation, is headquartered in Washington, D. C. It has a large number of operating telephone utilities as subsidiaries as well as some non-utility subsidiaries and operates in 42 states and several foreign countries. The subsidiaries here involved, Midland and Utah Telephone Companies, operate within and derive all their income within this State. This is so reported on their tax returns in question. They are also subject to the regulation and supervision of the Utah Public Service Commission and accounting methods approved by it, including the joining with other subsidiaries of Continental in filing its consolidated federal income tax return. The steps taken in computation, payment, and intersystem accounting of the consolidated federal income tax by Continental for each of the years in question are allowable under federal law. Pursuant to a closing agreement with the Internal Revenue Service, (hereinafter called I.R.S.) the consolidated federal return of Continental and its subsidiaries is prepared on a "separate company" basis, with Continental acting as an agent for each subsidiary in dealings with the I.R.S. Continental files a declaration of estimated taxes, remits quarterly payments, and at the end of the tax year files the return and pays any remaining tax, all on a consolidated basis.

Each of the subsidiaries, including Midland and Utah, computes its declaration of estimated federal taxes separately at the beginning of the tax year and remits its quarterly payments to Continental. At the close of the tax year, the federal taxable income is computed by each subsidiary for itself as a separate corporation, and each subsidiary forwards these figures to Continental for preparation of the consolidated return, together with any further payment that would be due on a separate company basis. Remittances of all members of the Continental group are made by actual transfers of funds and are not merely accounting entries. Continental's preparation of the consolidated return involves combining the separately computed net taxable incomes of each subsidiary with the net operating losses of other subsidiaries. Under present federal law, the filing of a consolidated return permits an economically related group of corporations to report on a basis of transactions entered into with outsiders, which means, in general, gain or loss on intercompany transactions between the

---

1. After the tax years in question, Midland Telephone Company merged into Utah Telephone Company and the surviving corporation took the name Continental Telephone Company of Utah. For clarity herein the plaintiffs are referred to as on the tax returns of concern in this case.

related corporations is eliminated from income of the reporting corporation.[2]

In the taxable years in issue here, the net amount due the I.R.S. under Continental's consolidated return was less than the sum of all the tax payments remitted separately to that company by the profit producing members of the Continental group. This was because some of the Continental subsidiaries had operating losses, so that the consolidated income of the Continental group totalled less than the incomes reported by the profit making subsidiaries, including these two plaintiffs.

When any current operating loss is utilized, Continental remits funds to that member, to the extent of the tax effect of the loss which could have been carried back to prior years under the Internal Revenue Code of 1954, if that member had filed a separate return with the I.R.S. The effect of any remaining unused portion of net operating loss is offset as to that member in the future and, thereafter, Continental remits funds to such member at the then current tax rate. The result is that any newly acquired loss incurring subsidiary, while its losses are used to offset current total group net taxable income, does not immediately receive a refund from Continental, but only upon establishing a pattern of profits is a refund then remitted to such a subsidiary based on its losses.

In the computation by plaintiffs of their Utah tax for each of the years in question, each deducted federal taxes in an amount computed by multiplying its taxable income, separately computed, by the then current federal income tax rate, less the appropriate amount of Federal investment credit earned,[3] and deducted that amount on its Utah tax return. Upon separate audits by the Tax Commission staff, the following tax deficiencies were assessed:

### UTAH TELEPHONE COMPANY

| Year | Proportionate Share of Fed. Tax Liab. | Fed. Tax Deducted on Utah Return | Over or (Under Deducted) Difference | Assessed Utah Tax Deficiency (Refund) |
|---|---|---|---|---|
| 1965 | $35,415.52 | $57,219.54 | 21,804.02 | $1,308.24 |
| 1966 | 27,205.00 | 48,979.00 | 21,774.00 | 1,306.44 |
| 1967 | 9,777.00 | 8,375.00 | (1,402.00) | ($85.20) |
| 1968 | -0- | | | None |
| 1969 | 15,749.00 | | | 369.84 |
| 1970 | 40,921.00 | 26,750.00 | (14,171.00) | ($850.26) |

### MIDLAND TELEPHONE COMPANY

| Year | Proportionate Share of Fed. Tax Liab. | Fed. Tax Deducted on Utah Return | Over or (Under Deducted) Difference | Assessed Utah Tax Deficiency (Refund) |
|---|---|---|---|---|
| 1965 | 46,000.00 | 91,250.00 | 45,250.00 | 2,577.91 |
| 1966 | 44,259.00 | 75,572.00 | 31,313.00 | 1,758.60 |
| 1967 | 45,322.00 | 90,491.00 | 45,169.00 | 2,560.40 |
| 1968 | 26,157.00 | 86,288.00 | 60,131.00 | 3,372.48 |
| 1969 | 24,802.00 | 54,573.00 | 29,771.00 | 1,688.28 |
| 1970 | -0- | -0- | | -0- |

---

2. See generally Treas.Reg.Secs. 1.1502–11 through 1.1564–1 and particularly Treas.Reg. Sec. 1.1502–13, J. Chommie, The Law of Federal Income Taxation 292 (2d Ed.1973).

3. Sec. 38 of the Internal Revenue Code of 1954 allows taxpayers who make "qualified investments" (basically depreciable property other than buildings and their structural components) a credit against tax liability. Section 46 of the Internal Revenue Code of 1954 generally provides in the case of public utility companies for a credit of 4% of the amount of such investments for the year such property is placed in service.

Nos. 13842 & 13843

In order to arrive at an equitable adjustment of the tax deduction allowable to the plaintiffs for payment of federal income taxes, the Commission allowed such deduction on the ratio that the federal taxable income of each profit producing subsidiary bears to the total taxable income of all profit producing subsidiaries.

The Tax Commission is by our constitution endowed with authority to " . . . administer and supervise the tax laws of the State . . . and . . . such other powers as may be prescribed by the Legislature;"[4] and this is implemented by statute, ". . . to perform such further duties as may be imposed upon it by law, and exercise all powers necessary in the performance of its duties."[5]

In dealing with the computation of net income in the determination of corporate franchise taxes, the legislature has provided for several classes of deductions from gross income, Section 59–13–7, U.C.A. 1953:

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

Taxes Paid

(3) Taxes paid or accrued within the taxable year, except—

(a) Taxes imposed by this chapter; and,

(b) Taxes assessed against local benefits of a kind tending to increase the value of the property assessed; provided, that so much of taxes are properly allocable to maintenance or interest charges may be deducted.

While the general rule as to taxing statutes is that they are construed strictly against the taxing authority and favorably to the taxpayer, the reverse is true as to provisions allowing deductions. It is usually held that deductions are allowed as

a matter of grace and therefore should be strictly construed.[6] In accordance with that rule, the taxpayer is required to show that his claim is fairly and clearly allowable under the terms of the statute.[7]

The Tax Commission does not question that Section 59–13–7(3), U.C.A. 1953, just quoted includes whatever federal taxes are paid as a proper deduction to plaintiff corporation. But the dispute here centers upon what constitutes "taxes paid" for purposes of qualifying for the deduction.

In an effort to deal with the complexities which arise in the allocation of deductions for various types of corporate structures, the Legislature has provided in Section 59–13–17, U.C.A. 1953:

Allocation of income and deductions between several corporations controlled by the same interests.—In any case of two or more corporations (whether or not organized or doing business in this state, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the tax commission *is authorized to distribute, apportion or allocate gross income or deductions between or among such corporations,* if it determines that such distribution, apportionment or allocation is necessary *in order to prevent evasion of taxes or clearly to reflect the income of any of such corporations.* [Emphasis added.]

The plaintiffs seek to justify their procedure by comparing rulings upon corporate taxation by the I.R.S. and the federal courts. They point out that the section just quoted is essentially the same in wording as Section 482 of the Internal Revenue Code of 1954. They note that the federal courts in construing Section 482 have interpreted that section to permit only the reallocation of incomes or deductions among the various members of an affiliated group and that federal courts have not

4. Art. XIII, Sec. 11, Utah Const.

5. Sec. 59–5–46, U.C.A.1953.

6. *Commissioner v. Sullivan*, 356 U.S. 27, 78 S.Ct. 512, 2 L.Ed.2d 559.

7. *Interstate Transit Lines v. Commissioner*, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.

allowed Section 482 to be used to disallow deductions, but have relied upon the provisions of Section 269 of the Internal Revenue Code of 1954 when disallowing deductions which did not appear to clearly reflect the income of affiliated corporations.[8]

Where there is doubt or uncertainty concerning the interpretation and application of statutes, they should be viewed in light of the condition and necessities which they are intended to meet and the objects sought to be attained thereby.[9] We think the broad wording of Section 59–13–17 indicates a legislative intent to cover all situations dealing with either direct or indirect corporate affiliates without regard to whether they file individual state or consolidated state corporate franchise tax returns; and that the language of that section authorizes the Tax Commission to so apportion income and deductions of corporations within such controlled groups as to fairly and equitably reflect the income earned in Utah.[10]

In the instant case, the key fact is that not all the "federal tax payments" remitted to the parent corporation by its profitable subsidiaries, and particularly not the amounts remitted by these two plaintiffs, reach the federal treasury as tax payments. A portion of each payment is diverted by the parent corporation to its various subsidiaries that are suffering operating losses, allowing such subsidiaries to obtain current use of their net operating losses rather than to await profitable years when such net operating losses could be carried forward and deducted from net income at that time. This in effect represents a transfer of credit for current income earned by plaintiffs in Utah to out of state subsidiaries of Continental. Quite clearly, since some of the out of state subsidiaries are operating at a deficit, they do not pay any tax on such transfers, either in Utah or the states in which they operate, and hence such income earned in Utah would completely escape Utah state taxation, if the plaintiffs' position were to prevail. We agree with the view of the Tax Commission that our statutes do not contemplate such a transfer as a deduction from net state income unless such payments are actually paid to the federal government.

It is further our opinion that the fair and reasonable interpretation of the term "taxes paid" in Section 59–13–7(3) is that it means a deduction for taxes paid or accrued which are actually paid or accrue to the taxing entity (I.R.S.); and it does not mean sums which are merely transferred to a foreign corporation or foreign subsidiaries purportedly for that purpose.[11] In conformity with what we have said herein, it is our conclusion that the apportionment of the amount of "federal taxes paid," according to the formula above recited is within the prerogative and duty of the Tax Commission and that its decision should be and is hereby affirmed. No costs awarded.

ELLETT, TUCKETT and MAUGHAN, JJ., concur.

HENRIOD, C. J., concurs in the result.

8. *Commissioner v. First Security Bank of Utah*, 405 U.S. 394, 92 S.Ct. 1085, 31 L.Ed. 2d 318; Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, pp. 15–21 through 15–30 (3d Ed.1971).

9. *United States Smelting, Refining & Milling Co. v. Utah Power & Light Co.*, 58 Utah 168, 197 P. 902.

10. *Kennecott Copper Corp. v. State Tax Commission*, 27 Utah 2d 119, 493 P.2d 632. We note here that Secs. 269 and 482 of the Internal Revenue Code of 1954 deal with problems of attempt to evade corporate taxes on a national scale by acquiring subsidiaries for the principal purpose of taking advantage of losses. There is no such contention or issue involved here.

11. Accord, see *Trunkline Gas Company v. Collector of Revenue*, La.App., 182 So.2d 674, *affd.*, 248 La. 1101, 184 So.2d 25; *contra Cities Service Gas Company v. McDonald*, 204 Kan. 705, 466 P.2d 277; but each decision is highly dependent on the particular state statutes involved.