*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 25**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ANADARKO PETROLEUM CORPORATION and
KERR-MCGEE OIL & GAS ONSHORE, L.P.,
*Petitioners and Appellants,*

*v.*

UTAH STATE TAX COMMISSION,
*Respondent and Appellee.*

No. 20130192
Filed January 30, 2015

Original Proceeding in this Court

Attorneys:

Nathan R. Runyan, Steven P. Young, Salt Lake City, for petitioners

Sean D. Reyes, Att'y Gen., Clark L. Snelson, Asst. Att'y Gen.,
Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
JUSTICE DURHAM, JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING authored a dissenting opinion.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1    This is a tax case that comes before us on appeal from a
formal decision of the Utah State Tax Commission (Commission).
Utah law imposes a severance tax on owners of oil and gas interests.
The tax rate an owner must pay depends on the fair market value of
the owner's interest. The question presented in this case concerns
how the value of such an interest is to be calculated. Petitioners
Anadarko Petroleum Corporation and Kerr-McGee Oil & Gas

Onshore L.P. (collectively Anadarko) argue that the Commission improperly disallowed deductions they made for tax-exempt federal, state, and Indian tribe royalty interests. Based on the plain meaning and structure of the severance tax statute, we agree and reverse the Commission's determination.

## Background

¶2    The facts of this case are not in dispute.  Anadarko acquired Kerr-McGee in 2006. From January 1, 2008, to December 31, 2011, Anadarko operated oil and gas wells in Carbon and Uintah counties. Anadarko filed severance tax returns during this period. On September 2, 2010, the Auditing Division of the Commission sent Anadarko a preliminary notice of its proposed tax liability. After correspondence between the parties, the Auditing Division issued two notices to Anadarko on November 10, 2010. The first notice informed Anadarko of a deficiency in its 2009 severance tax and assessed $10,118.54 in additional taxes and interest. The second notice informed Kerr-McGee that its claimed 2009 refund of $606,376.65 was being reduced by $111,654.09, resulting in a refund of $494,722.56.[1]  Anadarko conceded that $1,509.83 of the $10,118.84 deficiency was properly assessed and that $10,185.42 of the $111,654.09 refund was properly withheld, but it disputed the remaining actions of the Commission.

¶3    Anadarko challenged the disputed amounts by filing a petition for redetermination of tax with the Commission. Both Anadarko and the Auditing Division filed motions for summary judgment, and the Commission held a hearing on the cross-motions for summary judgment. The issue before the Commission was whether the Auditing Division had applied the correct tax rate, which involves the application of a somewhat complicated formula outlined in Utah Code sections 59-5-102 and 59-5-103.1.

¶4    The formula first requires the taxpayer to calculate the fair market value of the interest in oil or gas according to a sale in an "arm's-length contract" or by "comparison to other sales of oil or gas."[2] Second, permissible deductions are subtracted from that

---

[1] A small portion of these discrepancies in tax liability was due to the calculation of a stripper well exception. The Commission granted summary judgment in favor of Anadarko on this issue, and it is not before us on appeal.

[2] *See* UTAH CODE § 59-5-103.1(1)(a).

amount to yield the net taxable value.[3] Third, the Commission divides the taxable value by the amount of oil or gas produced. For natural gas, the unit of measurement is an MCF, or one-thousand cubic feet of natural gas.[4] So for Anadarko's natural gas interests, the third step yielded the taxable value per MCF (unit price). Finally, to determine the tax rate, the Commission calculates the percentage of the unit price up to $1.50 and then the percentage above $1.50. The percentage of the unit price up to $1.50 is the percentage of the taxable value assessed at a three-percent tax rate. The percentage of the unit price above $1.50 is the percentage of the taxable value assessed at a five-percent tax rate.[5]

¶5 We offer a brief example by way of illustration. In one of the calculations in this case, the net taxable value of 24,874 MCFs was $66,478. The net taxable value per MCF was therefore $2.67 (66,478/24,874 = 2.67). Fifty-six percent of the unit price is below $1.50 (1.50/2.67 = 0.56) and the remaining forty-four percent is above $1.50 ((2.67-1.50)/2.67 = 0.44). Therefore, of the $66,478 in taxable value, fifty-six percent is assessed at three percent (66,478*0.56 = 37,227.68), and forty-four percent is assessed at five percent (66,478*0.44 = 29,250.32).

¶6 The dispute before the Commission concerned step two of this formula—what deductions are permitted under the severance tax statute in the unit price calculation. Anadarko argued that because the statute exempts federal, state, and Indian tribe royalty interests from the severance tax, it also permits taxpayers to deduct such interests from the net taxable value in calculating the per unit price. The Auditing Division maintained that the unit price should be calculated "based on the prices at which the gas was sold, prior to the point when the producer paid the exempt royalties."

¶7 On December 13, 2011, the Commission determined there was no genuine issue of material fact and granted summary judgment in favor of the Auditing Division. The Commission agreed with the Auditing Division's calculation of price per MCF, relying on the plain language of Utah Code section 59-5-103.1. The Commission

---

[3] *Id.* § 59-5-103.1(1)(b)

[4] *See id.* § 59-5-102(2)(b); *What Is Natural Gas?*, AM. GAS ASS'N, http://www.aga.org/what-natural-gas (last visited January 26, 2015).

[5] UTAH CODE § 59-5-102(2)(b).

also acknowledged that the exempt entities' interests—the interests of federal and state governments, and Indian tribes—are not subject to the severance tax but must be included in the calculation of value under Utah Code sections 59-5-102 and -103.1. The Commission concluded that "[t]axable value is established prior to being allocated between the two tax rates" and that the Auditing Division's methodology did not increase Anadarko's taxable value. Anadarko filed a request for reconsideration on January 2, 2013, which the Commission denied. Anadarko timely appealed. We have jurisdiction to review final orders of the Utah State Tax Commission under Utah Code section 78A-3-102(3)(e)(ii).

**Standard of Review**

¶8 When reviewing formal adjudicative proceedings of the Utah State Tax Commission, we "grant the commission deference concerning its written findings of fact, applying a substantial evidence standard," and we review the Commission's conclusions of law for correctness, granting the Commission's legal analysis no deference.[6]

**Analysis**

¶9 Anadarko first argues that the Commission's decision is inconsistent with the terms of the Utah Severance Tax Act. It contends that the Act's plain language requires the exclusion of any federal, state, or Indian tribe interests from the calculation of value used to determine severance tax liability. And Anadarko maintains that reading the statute any other way creates two inconsistent meanings of "value" within sections 59-5-102 and 59-5-103.1. Anadarko also argues that reading the statute to include exempt federal interests in the unit price calculation violates the United States Constitution by imposing a tax on the federal government.

¶10 We agree with Anadarko that the plain meaning and structure of the severance tax statute categorically excludes federal, state, and Indian tribe interests from the unit price calculation. Accordingly, we do not reach the constitutional questions raised in Anadarko's brief.[7]

---

[6] UTAH CODE § 59-1-610(1).

[7] *See Bailey v. Bayles*, 2002 UT 58, ¶ 26, 52 P.3d 1158 ("[I]t is fundamental that constitutional issues should be avoided if the case can be properly decided on non-constitutional grounds." (internal quotation marks omitted)).

¶11    When interpreting a statute, we look first to the plain and ordinary meaning of its terms.[8] But we do not interpret statutory provisions in isolation. We also construe terms "in each part or section" of a statute "in connection with every other part or section so as to produce a harmonious whole."[9] The meaning of seemingly unclear or ambiguous provisions is often clear when read in context of the entire statute.[10]

¶12    Here, we acknowledge that the Commission's reading of the severance tax statute is plausible if section 59-5-103.1 is read in isolation. But when read in harmony with section 59-5-102(1)(b), we conclude that the plain language and structure of the statute categorically excludes federal and Indian tribe interests from the value calculation set forth in section 59-5-103.1.

¶13    Section 59-5-102(1)(a) imposes a severance tax on any "person owning an interest in oil or gas produced from a well in the state." The tax rate depends on the fair market value of a producer's oil or gas interest, as "determined under Section 59-5-103.1." That section allows anyone subject to the severance tax to deduct processing and transportation costs before "determining the fair market value of oil or gas," but it makes no mention of exempt royalty interests.

¶14    The Commission concluded that because section 103.1 does not include a deduction for federal, state, or Indian tribe royalty interests, the statute unambiguously dictates that the calculation of value does not permit the deduction of such interests. But this conclusion overlooks the fact that subsection 102(1)(a)—the provision that imposes the severance tax and sets forth how the rate is to be calculated under section 103.1—is, by its own terms, "[s]ubject to Subsection [102](1)(b)." And that subsection specifically excludes exempt interests from consideration under the entire section:

> This *section* [59-5-102] applies to an interest in oil or gas produced from a well in the state or in proceeds of the production of oil or gas produced from a well in the state except for: (i) an interest of the United States . . . ;

---

[8] *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465.

[9] *State v. Watkins*, 2013 UT 28, ¶ 29, 309 P.3d 209 (internal quotation marks omitted).

[10] *See Olsen*, 2011 UT 10, ¶ 9.

(ii) an interest of the state or a political subdivision . . . ;
or (iii) an interest of an Indian or Indian Tribe . . . .[11]

In other words, no provision in section 59-5-102 applies to "an interest in oil or gas" owned by any of the listed entities. This excludes the interests of these entities not just from the imposition of a severance tax, but from any consideration in calculating the "value" of an interest under section 59-5-102(1)(a) as determined by section 59-5-103.1. Accordingly, we conclude that Anadarko should be permitted to deduct these interests in calculating the unit price used to determine its tax rate.

¶15  The dissent argues that section 59-5-102 "says nothing of deducting [exempt] interests for purposes of calculating fair market value."[12] And it focuses on the fact that section 59-5-103.1 "specifically enumerates the deductions that are permitted at that stage—deductions for processing and transportation costs"— without including "royalty interest deductions."[13] Because exempt royalty interests are not listed as permissible deductions, the dissent would hold that the plain text of section 59-5-103.1 unambiguously prohibits the deduction of such interests in calculating the unit price.

¶16  As a general proposition, the dissent is correct that we "'give effect to omissions in the statutory language by presuming all omissions to be purposeful.'"[14] But in this case, the dissent's application of that canon begs the question of whether in fact the omission it identifies is purposeful. If, as we hold today, section 59-5-102(1)(b) excludes exempted royalty interests altogether from both the imposition of the severance tax *and* the value calculation it references in section 59-5-103.1, including an additional deduction for such interests in section 59-5-103.1 would have been entirely superfluous.

¶17  And moreover, the subsection 102(1)(b) exclusion is not a "deduction" in the sense of a cost or expense to be subtracted from the fair market value of an oil or gas interest. Rather, it specifies what types of interests are subject to taxation and section 103.1's

---

[11] UTAH CODE § 59-5-102(1)(b) (emphasis added).

[12] *Infra* ¶ 26.

[13] *Infra* ¶ 26.

[14] *Infra* ¶ 26 (quoting *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 50, ¶ 14, 267 P.3d 863).

valuation formula in the first place. So it makes perfect sense for the Legislature to have provided that exclusion separately. For these reasons, the Legislature's failure to include a specific deduction for exempt royalty interests in section 103.1 does not tell us anything about whether it intended to allow taxpayers to deduct them in the severance-tax-rate calculation.

### Conclusion

¶18 We hold that Utah Code sections 59-5-102 and -103.1 categorically exclude any federal, state, and Indian tribe interests from the net taxable value of an oil or gas interest for purposes of calculating the applicable tax rate. The Commission erred in concluding otherwise. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

––––––––––––

ASSOCIATE CHIEF JUSTICE NEHRING, dissenting:

¶19 I respectfully dissent. At bottom this case presents an issue of statutory interpretation. I find Anadarko's statutory and constitutional arguments unpersuasive, and I disagree with the majority's interpretations of the relevant Severance Tax Act provisions. I would therefore uphold the decision of the Utah State Tax Commission (Commission).

### I. THE UTAH SEVERANCE TAX ACT DOES NOT PERMIT A DEDUCTION FOR ROYALTY INTERESTS IN THE CALCULATION OF MARKET VALUE OF OIL AND GAS

¶20 Utah Code section 59-5-102 governs the severance tax for oil and natural gas interests within the state. The statute employs a two-tiered rate scheme whereby part of the tax is assessed at 3 percent and the remainder at 5 percent.[15] The operation of these tax rates lies at the heart of the parties' dispute.

¶21 Utah Code section 59-5-102 requires that "a person owning an interest in oil or gas produced from a well in the state" pay a severance tax on the oil or gas "on the basis of the value determined under Section 59-5-103.1."[16] This tax must be paid on all oil or gas

––––––––––––

[15] UTAH CODE § 59-5-102(2).

[16] *Id.* § 59-5-102 (1)(a).

produced and saved, sold, or transported from the field.[17] Subsection (1)(b) dictates that the severance tax applies to "an interest in oil or gas . . . or in the proceeds of the production of oil or gas produced from a well in the state," but it specifically exempts interests owned by the United States, the state or political subdivisions of the state, or Indian tribes.[18]  The statute provides that the severance tax rate for natural gas is "3% of the value of the natural gas up to and including the first $1.50 per MCF for gas" and "5% of the value of natural gas from $1.51 and above per MCF for gas."[19]  The statute mandates that "value" is "determined under Section 59-5-103.1."[20]

¶22  Utah Code section 59-5-103.1 provides the calculation for how "the value of oil or gas shall be determined" for the purposes of imposing tax "under Section 59-5-102."[21]  Importantly, the computation of fair market value under section 59-5-103.1 makes no mention of a deduction for exempt royalty interests.  Instead, to determine fair market value, an owner may deduct "processing costs" and "transportation costs."[22]

¶23  Notwithstanding the absence of an express deduction, Anadarko contends that the plain language of the statutes nonetheless requires that the exempt interests be deducted from the calculation of value under section 59-5-103.1.  The Commission responds, quite simply, that section 59-5-103.1 on its face does not allow such a deduction.

---

[17] *Id.*

[18] *Id.* § 59-5-102 (1)(b).  Section 59-5-102 was amended in 2011, during the audit period for the present case.  *See* Severance Tax Amendments, ch. 54, sec. 1, § 59-5-102, 2011 Utah Laws 407, 407.  The amendment added, as relevant for our purposes, subsection (1)(b). *See id.*  However, both parties agree that this amendment was simply a clarification of the previous law and that our analysis should remain the same under both versions of the statute.

[19] UTAH CODE § 59-5-102(2)(b).

[20] *Id.* § 59-5-102(1)(a).

[21] *Id.* § 59-5-103.1(1)(a).

[22] *Id.* § 59-5-103.1(1)(b).

¶24 It is axiomatic that "[w]hen interpreting statutory language, our primary objective is to ascertain the intent of the legislature."[23] And "[t]he best evidence of the legislature's intent is the plain language of the statute itself."[24] Thus, "[w]hen statutory language is clear, there is no need for us to look further to determine legislative intent."[25]

¶25 Neither party disputes that the exempt royalty interests must be deducted from Anadarko's ultimate tax liability. Both Anadarko and the Commission agree that the Auditing Division correctly subtracted the federal, state, and Indian interests from Anadarko's taxable amount.[26] But Anadarko claims that it must also be allowed to deduct the exempt interests from the value computation, which in turn will direct how the two tax rates are to be calculated. Anadarko argues that it would have been superfluous to explicitly include this deduction in section 59-5-103.1, which provides the value calculation, because under section 59-5-102(1)(b) the severance tax does not apply to the exempted interests. I disagree. In looking to the plain language of Utah Code sections 59-5-102 and -103.1, I would conclude that the text unambiguously dictates that the calculation of value does not permit the deduction of federal, state, or Indian royalty interests.

¶26 Section 59-5-102 very clearly does not tax the exempted interests, but it says nothing of deducting those interests for the purposes of calculating fair market value. In fact, section 59-5-103.1 specifically enumerates the deductions that are permitted at that stage—deductions for processing and transportation costs—but does not allow royalty interest deductions. When interpreting statutory language, we must "give effect to omissions in the statutory language by presuming all omissions to be purposeful."[27] Therefore, I would not ignore the plain language of the statute and read in an

---

[23] *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 21, 266 P.3d 751.

[24] *Reynolds v. Bickel*, 2013 UT 32, ¶ 10, 307 P.3d 570 (internal quotation marks omitted).

[25] *Morra v. Grand Cnty.*, 2010 UT 21, ¶ 32, 230 P.3d 1022.

[26] It is for this reason that Anadarko's constitutional and federal statutory arguments fail. *See infra* Part II.

[27] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863.

additional deduction that the legislature did not provide. It is clear that the legislature contemplated possible deductions for the value calculation and yet omitted the deduction for the royalty interests. I would not alter this legislative determination by judicial fiat.

¶27 Moreover, I do not believe, as Anadarko next contends, that this interpretation creates inconsistent definitions of "value" within the Act. Anadarko argues that the Commission interprets "value" under section 59-5-102(1) to exclude the exempt interests but then interprets "value" in section 59-5-102(2) to include such interests. I disagree. Subsection (1) directs the taxpayer to pay a severance tax "on the basis of the value determined under Section 59-5-103.1." Subsection (2) then subjects the taxpayer to a tax of either 3 percent or 5 percent of that value. Thus, subsection (1) supplies the determination of value that is used in subsection (2). In this way, subsection (2) simply incorporates the computation of value found in subsection (1). I find this understanding of the statutes to be wholly consistent.[28]

¶28 In sum, by evaluating the plain language of the statute, I would conclude that the text of section 59-5-103.1 is unambiguous. When calculating the value of the oil or gas, Anadarko may deduct the transportation and processing costs but not the exempt royalty interests.

## II. THE CALCULATION OF VALUE UNDER UTAH CODE SECTION 59-5-103.1 DOES NOT VIOLATE CONSTITUTIONAL OR STATUTORY PROVISIONS

¶29 Anadarko also argues that including the royalty interests in the calculation of value imposes a tax on the federal government and Indian tribes in violation of the Supremacy Clause of the United

---

[28] Anadarko's argument also appears premised on the Commission's Form TC-684A (Schedule A), used for calculating the severance tax liability. Anadarko argues that the term "value" in lines 12 and 18 of Schedule A are inconsistent. Even if that is the case, when interpreting statutes, we do not look to such forms as controlling interpretations of law. *See Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 17, __ P.3d __ (explaining that forms can be helpful "exemplars"); *McKnight v. State Land Bd.*, 381 P.2d 726, 731 (Utah 1963) (holding that an individual must "comply with the law regardless of any form that may be used," even if furnished with a deficient form by the State).

States Constitution as well as state and federal statutes.[29] Anadarko cites the seminal case *M'Culloch v. Maryland*[30] for the proposition that states cannot levy taxes on the federal government. I unquestionably agree. However, the State of Utah has imposed no tax whatsoever on federal or Indian property, nor on the State itself. As Anadarko concedes, the Commission correctly deducted the exempt royalties attributable to the federal, state, and Indian interests from Anadarko's taxable value. Apparently recognizing this, Anadarko asserts that "any severance tax which *incorporates* federal royalties in calculating value . . . is a tax on the government in violation of the Supremacy Clause." (Emphasis added.) This is not so. That the tax rates applied to Anadarko are determined by reference to the exempt interests does not render the State's action a tax on those exempt entities. Neither the federal government nor an Indian tribe has alleged that it has been improperly assessed a tax. The only entity being taxed is Anadarko, and I find any argument to the contrary perplexing. Accordingly, Anadarko's claims based on the Supremacy Clause, as well as related federal and state statutes, fail.

¶30 Finally, Anadarko argues that the Commission's calculation violates due process because it imposes a tax on Anadarko that is "based upon the property of other entities." However, as discussed above, there can be no contention that Anadarko is required to pay a tax on the royalty interests of federal, state, or Indian entities. Anadarko agrees that the royalty interests were properly deducted from its taxable value. For this reason, *Hoeper v. Tax Commission* provides no support for Anadarko.[31] In *Hoeper,* the United States Supreme Court was called upon to determine whether the property of a married woman could be taxed as belonging to her husband, as at common law, or whether the wife's income was her own separate

---

[29] Anadarko brings its state statutory claim under Utah's Enabling Act, which provides that "no taxes shall be imposed by the State on lands or property therein belonging to or which may hereafter be purchased by the United States or reserved for its use." Utah Enabling Act of 1894, ch. 138, § 3, 28 Stat. 107, 108. Anadarko's federal statutory argument is based on the Indian Reorganization Act, which states that title to land or any rights taken by the federal government in trust for an Indian tribe "shall be exempt from State and local taxation." 25 U.S.C. § 465 (2012).

[30] 17 U.S. (4 Wheat) 316 (1819).

[31] 284 U.S. 206 (1931).

property.[32]  The Court determined that "the wife's income is in the fullest degree her separate property and in no sense that of her husband," and thus taxing the husband on his wife's property violated due process.[33]  In contrast, Anadarko is not taxed at all on the royalty interests of the exempted entities.[34]  Moreover, deductions in the tax code "are allowed as a matter of grace."[35]  Therefore, where the legislature has chosen to define value as the total value of the gas that Anadarko removed from the Utah soil, the legislature is under no obligation to provide additional deductions to taxpayers.  Thus, I would hold that the Commission's decision does not violate the United States Constitution or other state and federal statutory provisions.

## CONCLUSION

¶31   Utah Code section 59-5-103.1 provides the calculation for the value of oil or gas that is used to determine the tax rate allocation under section 59-5-102.  Under the plain language of the statute, taxpayers are permitted to deduct both processing costs and transportation costs for the purposes of calculating that value, but the statute does not allow a taxpayer to deduct royalty interests from the calculation.  This interpretation does not implicate constitutional or statutory concerns because no exempt interests are subject to taxation.  I would therefore affirm the Commission's ruling.

---

[32] *Id.* at 215.

[33] *Id.* ("That which is not in fact the taxpayer's income cannot be made such by calling it income.").

[34] The additional cases cited by Anadarko are likewise inapposite.  Both cases addressed due process concerns related to states that taxed business activities conducted outside their borders; they have no application in the present context.  *See Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983) ("Under both the Due Process and the Commerce Clauses . . . , a state may not, when imposing an income-based tax, tax value earned outside its borders." (internal quotation marks omitted)); *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 U.S. 307, 315 (1982) ("As a general principle, a State may not tax value earned outside its borders.").

[35] *Cont'l Tel. Co. of Utah v. State Tax Comm'n*, 539 P.2d 447, 450 (Utah 1975); *see also INDOPCO, Inc. v. Comm'r,* 503 U.S. 79, 84 (1992) ("[D]eductions are strictly construed and allowed only as there is a clear provision therefor." (internal quotation marks omitted)).